# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

STRATTON H. SMITH,

    Plaintiff,

v.                                                   Case No: 8:22-cv-1386-CEH-TGW

MT. HAWLEY INSURANCE
COMPANY,

    Defendant.

_____

## ORDER

This cause comes before the Court on Defendant Mt. Hawley Insurance Company's Motion to Transfer Venue (Doc. 11), Plaintiff Stratton H. Smith's Response in Opposition (Doc. 24), and Defendant's Reply (Doc. 29). In this insurance action, Defendant seeks to enforce a forum selection clause requiring that any litigation between the parties be initiated in New York.

Upon full consideration and review of the parties' submissions, the Court will grant the motion and transfer this action to the Southern District of New York.

**I.    BACKGROUND**

Plaintiff filed an action in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County on December 22, 2021, alleging that Defendant breached its property insurance policy ("the Policy") when it refused to provide coverage for damage that Plaintiff alleged was caused by a windstorm and water intrusion. Doc. 1-

1. Defendant timely removed the action on June 17, 2022, pursuant to 28 U.S.C. §§ 1332, 1441.

Defendant now moves to transfer the action to the Southern District of New York, asserting that a mandatory forum selection clause in the Policy requires any litigation commenced by Plaintiff against Defendant be initiated in New York. Doc. 11. An endorsement to the policy reads as follows:

> **SERVICE OF SUIT AND CONDITIONS ENDORSEMENT**
>
> This Policy is amended to add the following additional **Commercial Property Conditions**:
>
> **AA. Jurisdiction and Venue.** It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, any Named Insured, any additional insured, and any beneficiary hereunder shall submit to the jurisdiction of a court of competent jurisdiction in the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any Named Insured, any additional insured, or any beneficiary hereunder against the Company **shall be initiated in New York**. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.
>
> **BB. Choice of Law.** All matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

Doc. 11-1 at 119. Defendant contends that the forum selection clause is valid, applicable, and mandatory, and that it is not contrary to the public interest. Doc. 11 at 8-15. Accordingly, the clause is enforceable and Plaintiff is required to litigate in New York. *Id.*

2

Plaintiff opposes a transfer, arguing that the forum selection clause is unenforceable. Doc. 24. First, Plaintiff argues he received "absolutely no notice" about the forum selection clause. *Id.* at 4. The quote package Plaintiff received through the property manager did not refer to a New York forum, and instead was replete with references to Florida law. *Id.* at 2-4. Plaintiff did not receive the Policy for more than a month after accepting the quote, and it, too, referenced Florida law several times. *Id.* at 5. The Policy then "buried" the forum selection clause on page 70 out of 118. *Id.* Plaintiff asserts that the forum selection clause is the result of fraud and overreaching because he did not have the ability to become informed about it. *Id.* at 10-11. It is also against public policy in Florida because New York law provides fewer protections to policyholders than Florida law. *Id.* at 11-13. Plaintiff further argues that the Policy's many references to Florida law render it ambiguous as to which law governs. *Id.* at 6-9.

In reply, Defendant first argues that the forum selection clause is not the result of fraud and overreaching, because Plaintiff had a meaningful opportunity to become informed. Doc. 29 at 3-4. The quote package warned prospective policyholders that its terms might differ from the policyholder's specifications, and directed them to read the entire Policy, which was available upon request. *Id.* at 3-4. Further, the fact that the law may be less favorable to Plaintiff in the chosen forum does not mean that the clause contravenes public policy. *Id.* at 5-7. Additionally, there is no ambiguity because any references to Florida law are superseded by the endorsement, and, in any event, are not inconsistent with the forum selection clause. *Id.* at 1-2.

## II. LEGAL STANDARD

The statute governing transfer of venue, 28 U.S.C. § 1404(a), provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." This analysis typically requires a two-pronged inquiry wherein courts consider both the convenience of the parties and the public interest. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). A valid forum-selection clause "[should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Constr.*, 571 U.S. at 63 (citations and internal quotation marks omitted). Thus, "when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its venue privilege before a dispute arises." *Id.* "Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 63–64.

The plaintiff's burden of proof is a heavy one: he must make "a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009); *see also Xena Invs., Ltd.*

4

*v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1284 (11th Cir. 2013). A court will invalidate a forum-selection clause only when "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281.

### III. DISCUSSION

Plaintiff argues that the forum selection clause is unenforceable because it is based on fraud and overreaching and it contravenes public policy. Plaintiff further contends that the Policy is ambiguous and, as a result, the Court should construe it against the drafter and in Plaintiff's favor. However, the Court concludes that the forum selection clause is enforceable and unambiguous.

#### A. Fraud and Overreaching

Plaintiff first asserts that the forum selection clause was induced by fraud or overreaching, because he had no opportunity to see it before entering into the contract. Doc. 24 at 10-11. Defendant responds that Plaintiff had the opportunity to view the Policy through his insurance broker, and the quote package warned him to do so. Doc. 29 at 3-4.

To determine whether there was fraud or overreaching in a non-negotiated forum-selection clause, courts consider whether the clause "was reasonably communicated to the consumer." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). "A useful two-part test of 'reasonable communicativeness' takes

5

into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms. *Id.* Reasonable communication puts the consumer on notice that they *should* read the terms and conditions of a policy, regardless of whether they choose to do so. *Id.* at 1282 (finding clause was not the result of fraud or overreaching where it notified the signatory to read before signing); *see also Nash v. Kloster Cruise A/S,* 901 F.2d 1565, 1567 (11th Cir.1990) (holding a warning to "read the terms and conditions" provided reasonable notice).

It is not unreasonable to require a consumer to take extra steps to access the terms and conditions of a contract. In *Feggestad v. Kerzner Int'l Bahamas Ltd.*, 843 F.3d 915, 917 (11th Cir. 2016), for example, the court concluded that a reservation confirmation email that included a hyperlink advising guests to view other terms and conditions provided sufficient notice of a forum selection clause; the court emphasized that nothing prevented guests from clicking on the link. *See also Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 201 (11th Cir. 2019) (same, where passengers were required "to follow two hyperlinks and then scroll down to locate the forum selection clause"); *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 966 (11th Cir. 2014) (same); *Muniz v. Fenix Int'l Ltd.*, 1:20-cv-3200-LMM, 2021 WL 3417581, *3 (N.D. Ga. June 28, 2021) (hyperlink at bottom of company's website was sufficient to convey terms and conditions of contract). Similarly, in *Koswire, Inc. v. Alpha Stainless, Ltd.*, 2:18-cv-00047-RWS, 2018 WL 8368847, *8-9 (N.D. Ga. Aug. 1, 2018), the court rejected an argument that the terms and conditions were not reasonably

6

communicated because they were not actually given to the plaintiff. The court found dispositive the fact that the plaintiff received multiple invoices that stated "All goods sold subject to our terms and conditions of sale. Copies available on request." *Id.* at *9. On the other hand, it was not reasonable to require cruise passengers to access the contract terms from a booking office located in Italy when they were not informed of the terms' existence until they were boarding the cruise from a port in Florida. *Azzia v. Royal Caribbean Cruises, Ltd.*, 15-CV-24776-JLK, 2016 WL 11395237, *3 (S.D. Fla. Aug. 21, 3016).

Constructive notice through an agent will also constitute reasonable communication. *See Baer v. Silversea Cruises Ltd.*, 752 F. App'x 861, 865–66 (11th Cir. 2018) (where record reflected plaintiff communicated regularly with travel agent and authorized her to receive certain documents on his behalf, he had the opportunity to avail himself of the notices contained in the ticket contract in her possession); *McArthur v. Kerzner Int'l Bahamas Ltd.*, 607 F. App'x 845, 847–48 (11th Cir. 2015) (because plaintiffs' travel agent knew that resort guests were subject to certain terms and conditions, agreed to notify their clients regarding the terms and conditions, and knew where to obtain the specific terms and conditions, plaintiffs had constructive notice of the forum selection clause).

With respect to physical characteristics, a forum selection clause cannot be hidden or minimized, but it need not be prominent. In *Krenkel*, for example, the court concluded the physical characteristics of the clause provided reasonable notice where it was on a one-page form containing only eight paragraphs, it was set apart in a

separate paragraph and printed in the same font and size as the other paragraphs, and the page had a warning to read before signing in bold, capitalized letters. *Krenkel*, 579 F.3d at 1282. Moreover, the length of the document in which the clause is contained is not a dispositive factor. *See Est. of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1246 (11th Cir. 2012) ("Although the term appears 131 pages into the Royal Caribbean brochure, the terms and conditions section itself, of which the clause is a part, appears to be only four pages, and it would be inaccurate to characterize this term as somehow 'buried' within that section; it can be found under a clear heading, surrounded by related headings, and it appears in identical typeface and size to all of the other terms and conditions.") (superseded by statute on other grounds as stated in *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1364 n.2 (11th Cir. 2018)).

Here, the physical characteristics of the document containing the forum selection clause do not establish fraud or overreaching. The page containing the clause states clearly, in bold, capitalized text at the top, "This endorsement changes the Policy. Please read it carefully." Doc. 11-1 at 119; *see Krenkel*, 579 F.3d at 1282 (form notified signatory to read before signing). All of the text, except for the heading, is printed in the same size and in a legible font. Doc. 11-1 at 119. The forum selection and choice of law provisions have bolded headings and are prominent on the page. *Id.* In light of these physical characteristics, the fact that the page is contained within a lengthy document is not dispositive. *See Myhra*, 695 F.3d at 1246.

Whether Plaintiff had the ability to become meaningfully informed of the forum selection clause is a closer question. First, the Court rejects Defendant's argument that

Plaintiff was put on notice by the statement, "The terms and conditions of this quotation may not comply with the specifications submitted for consideration. Please read this quote carefully and compare it against your specifications." Doc. 24-1 at 6; Doc. 29 at 3-4. This statement simply cautions customers to read the quote—a document that does not contain the forum selection clause—and to compare it against the specifications the customer provided for its desired policy. It does not notify customers to read the Policy.

However, a subsequent page of the quote package entitled "Surplus Lines Disclosure" states, "I have been advised to carefully read the entire policy." Doc. 24-1 at 13. Samer Alghafari, Plaintiff's agent, signed this form on May 20, 2021. Doc. 29-1 at 16. This statement did provide reasonable notice to Plaintiff that he should review the Policy. It is true that the Policy was not affirmatively provided to Plaintiff or even made available to him via a hyperlink. However, there is also no evidence he was prevented from obtaining it or that he could only do so at great inconvenience. *Cf. Azzia*, 2016 WL 11395237 at *3. Indeed, Defendant's underwriter invited Plaintiff's insurance broker to contact them with any questions, and the broker informed Alghafari to do the same. *See* Doc. 29-1 at 6; Doc. 24-1 at 5; *see McArthur*, 607 F. App'x at 847–48 (plaintiffs had constructive notice where their travel agent knew where to obtain the specific terms and conditions). The quote package contained a list of the documents that would be attached to the Policy, which included the endorsement containing the forum selection clause. Doc. 24-1 at 9-10. Defendant attests that "[a]ll of the Policy forms and endorsements were available for review had the Insured or its

9

insurance broker requested same." Doc. 29-1 ¶ 11. It is not unreasonable to expect Plaintiff to contact his insurance broker to request to view the listed documents before entering into the contract, particularly when he signed a form encouraging him to read the Policy. *Cf. Azzia*, 2016 WL 11395237 at *3. Accordingly, the fact that Defendant did not affirmatively invite Plaintiff to access the full Policy in advance does not demonstrate that he was prohibited from doing so. *See Feggestad*, 843 F.3d at 919, citing *Allied Van Lines, Inc. v. Bratton*, 351 So.2d 344, 347–48 (Fla. 1977) ("Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding."). Plaintiff has not established that he had no meaningful ability to obtain and review the full Policy, just as the documents he signed encouraged him to do, before it went into effect.

Moreover, Plaintiff received the Policy at least a month before the property damage occurred, Doc. 30 at p. 6 ¶ 11,[1] providing additional opportunity after the Policy was in effect to become informed of the forum selection clause and pursue rescission if desired. *See Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 926–27

---

[1] Alghafari explains that he received a full copy of the Policy "more than a month after" he accepted the quote package, which occurred on May 20, 2021. *Id.*; Doc. 29-1 at 16. The property was allegedly damaged on August 9, 2021. Doc. 1-1 ¶ 7.

Defendant argues that Alghafari's affidavit "falls short of the 'strong showing' needed to invalidate the clause" because it was unexecuted in Plaintiff's original submission. Doc. 29 at 3; *see* Doc. 24-1. Plaintiff subsequently filed an executed version of the affidavit, explaining the original submission was the result of an administrative error. Doc. 30. The Court accepts the executed version of Alghafari's affidavit but concludes Plaintiff has failed to make the requisite strong showing for the reasons explained in this Order.

(11th Cir. 2016) (plaintiffs did not allege that they requested to strike out the forum-selection clause at check-in and were refused); *McCluskey v. Celebrity Cruises, Inc.*, 20-CV-24705, 2021 WL 501903, *5 (S.D. Fla. Sept. 3, 2021) (collecting cases in which courts emphasized plaintiff had the opportunity to become informed of a contract's terms and conditions after accepting it); *see also Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306, 313 (Fla. 2000) (noting a party's right to rescind is subject to waiver if he retains the benefits of a contract after discovering the grounds for rescission). Given the clarity of the endorsement and the warning to policy holders to read it carefully, there is no doubt it provided actual notice once Plaintiff received it—on top of Plaintiff's ability to become meaningfully informed before he accepted the quote. Therefore, the forum selection clause was reasonably communicated to Plaintiff and was not the result of fraud of overreaching.

### B. Public Policy

Plaintiff next argues that the Court should not enforce the forum selection clause because it is contrary to public policy, as Florida insurance law is more favorable to policyholders than New York law. Doc. 24 at 11-13. This argument is meritless.

Public interest factors "will rarely defeat a transfer motion" that is based upon a forum selection clause. *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013). As a result, "forum-selection clauses should control except in unusual cases." *Id.* Courts are therefore reluctant to find that public interest factors or public policy disfavor enforcement of a forum selection clause outside of extraordinary

...

cases. *See*, *e.g.*, *SSAB Alabama, Inc. v. Kem-bonds, Inc.*, 17-CV-0175-WS-C, 2017 WL 6345809, *6 (S.D. Ala. Dec. 12, 2017) (plaintiff "has made no showing that the public-interest factors overwhelmingly disfavor enforcement of the forum-selection clause… This is not an unusual or extraordinary case; therefore, the forum-selection clause is properly enforced."); *Davis v. Oasis Legal Finance Operating Company, LLC*, 936 F.3d 1174, 1178 (11th Cir. 2019) ("Public policy is an amorphous concept…Accordingly, it has been held that, the delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution.").

The fact that another forum's law is less advantageous to a plaintiff than the original forum does not render a forum selection clause contrary to public policy. As the Eleventh Circuit has stated, "[w]e will not invalidate choice clauses … simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998). Rather, a choice clause will be declared unenforceable "only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Id.* A forum is considered adequate if it "provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiff's injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2001); *see Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F.Supp.3d 1132, 1139 (S.D. Fla. 2019) (plaintiff was not deprived of a remedy by forum selection clause even though the laws of the chosen forum would make it impossible for the plaintiff to bring a class action, because her remedy would not be "altogether lost").

12

On the other hand, where the forum state has a clear public policy that prohibits enforcement of forum selection clauses, a forum selection clause will be found to contravene it. For example, the Eleventh Circuit concluded that a forum selection clause was against public policy in *Davis*, 936 F.3d at 1179-81 (11th Cir. 2019), because Georgia law expressly prohibited enforcement of forum selection clauses in cases involving payday loans. *Cf. SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 1:19-CV-00333-KD-C, 2019 WL 13217861, *5 (S.D. Ala. Sept. 26, 2019) (rejecting argument that forum selection clause was unenforceable under Alabama public policy that did not expressly prohibit such clauses; noting that the plaintiff "is essentially requesting that the undersigned articulate and apply a public policy that has not been stated or even implied by the Alabama legislature."); *Gordon*, 418 F.Supp.3d at 1140-41 (finding that Florida does not have a clear policy against forum selection clauses in cases arising under Florida's Deceptive and Unfair Trade Practices Act).

Here, Plaintiff does not argue that Florida public policy prohibits the enforcement of forum selection clauses in insurance cases, despite what he describes as Florida's "strong public policy…to level the playing field between insureds and insurers." Doc. 24 at 13; *cf. Davis*, 936 F.3d at 1179-81. He also does not argue that New York does not provide for litigation of his claims or the potential for recovery, or that his remedy would be "altogether lost" there. *See King*, 562 F.3d at 1382; *Gordon*, 418 F.Supp.3d at 1139. Rather, he merely asserts that Florida is a more favorable forum for him to litigate his claims than the contractually-mandated forum of New York. He has therefore failed to establish that the instant case is an unusual or

extraordinary one in which public interest factors will control over the enforcement of an otherwise valid forum selection clause. *See Atlantic Marine Const. Co.*, 571 U.S. at 64. The forum selection clause does not contravene public policy.

### C. Ambiguity

Plaintiff also contends that the Policy is ambiguous as to which law and forum govern this lawsuit because the Policy and quote package referenced Florida law—in contradiction to the forum selection clause purporting to require the application of New York law. Doc. 24 at 6-9. Because the Court must resolve ambiguities in Plaintiff's favor, Plaintiff argues the Court should decline to enforce the forum selection clause. *Id.* Defendant responds that ambiguity is not a defense to enforcement of a forum selection clause, and, in any event, the endorsement containing the clause is controlling. Doc. 29 at 1-2.

A doctrine of contract interpretation known as *contra proferentem* holds that ambiguity in a contract should be construed against the drafter. As the Supreme Court recently emphasized, however, this doctrine "applies only as a last resort when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation." *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1417 (2019); *see also AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1294 (11th Cir. 2022) (citing to *Lamps Plus* when concluding that because the forum selection clause was not ambiguous, *contra proferentem* did not apply).

The forum selection clause in the instant case is not ambiguous. Plaintiff does not dispute that the language of the forum selection clause itself is clear and constitutes

14

a "solid expressions[] of intent to litigate in New York[.]" Doc. 24 at 8. Moreover, the endorsement that contains the clause expressly and prominently states that it "changes the policy." Doc. 24-8. It is therefore clear from the face of the document that, to the extent any of its provisions conflict with provisions in the rest of the Policy, the endorsement will control. *See* Doc. 29 at 1-2.[2] The Court does not find, however, that the references to the Florida Surplus Lines Law and the Florida Building Code in the rest of the Policy conflict with the forum selection clause or create an ambiguity as to the drafters' intent to litigate in New York. *Cf.* Doc. 24 at 7.[3] The endorsement at issue is the only section of the Policy that contains information regarding the forum for litigation arising between the parties in connection with Policy coverage. Contrary to Plaintiff's argument, the Court finds that the fact that a clause of the Policy entitled "Legal Action Against Us" is silent as to forum and choice of law lessens, rather than adds to, any confusion, because it eliminates a potential source of conflict between the

---

[2] The Court also disagrees with Plaintiff that the endorsement itself is ambiguous with respect to forum selection because of the "Service of Suit" provision. Doc. 24 at 7-8, citing Doc. 24-8. This provision directs an insured to serve process on Defendant "in compliance with the applicable statutes governing said service of process in the state or jurisdiction." *Id.* It does not specify *which* state or jurisdiction. *Id.* Plaintiff assumes it refers to the jurisdiction in which the suit is occurring, extrapolating that it "contemplates that the carrier can and may be sued in states other than New York" and therefore refers to the law of other states. Doc. 24 at 8. The Court does not read it so broadly or find that it creates any ambiguity regarding the drafters' intent as to the forum selection clause.

[3] Because a motion to transfer is the only motion before the Court, the Court is only considering the enforceability of the forum selection clause. It need not, and does not, determine whether the references to Florida law create ambiguity with respect to the choice of law provision.

15

documents. *Cf.* Doc. 24 at 8, citing Doc. 24-9. Therefore, there is no ambiguity to construe in Plaintiff's favor. *See AFC Franchising*, 43 F.4th at 1294.

## IV. CONCLUSION

Plaintiff has not established that the mandatory forum selection clause requiring the parties to litigate in New York is unenforceable or otherwise invalid.[4] Defendant's motion to transfer this action to the Southern District of New York is therefore due to be granted.

Accordingly, it is **ORDERED**:

1. Defendant Mt. Hawley Insurance Company's Motion to Transfer Venue (Doc. 11) is **GRANTED**. This action is transferred to the Southern District of New York.

---

[4] Plaintiff also relies on *Seneca Ins. Co. v. Henrietta Oil Co.*, No. 02 Civ. 3535(DC), 2003WL255317 (S.D.N.Y. Feb. 4, 2003), an unpublished decision from the Southern District of New York, for the contention that it would be "unjust" to enforce the forum selection clause. Doc. 24 at 14-16. The Court acknowledges some factual similarities between *Seneca* and the instant case, including that the litigation bears little to no relationship to the contractually-chosen forum. However, the *Seneca* court was not bound by the analytical framework the Eleventh Circuit set forth in *Lipcon*, 148 F.3d at 1292, and *Krenkel*, 579 F.3d at 1281. The considerations the *Seneca* court found dispositive—primarily the lack of connection to the contractual forum—are not encompassed by the Eleventh Circuit's four-factor test. *See id.* ("(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy"). While litigating in New York may not be Plaintiff's preference, he has not established that doing so would be so inconvenient or unjust such that it deprives him of his day in court. Accordingly, this Court declines to follow *Seneca*.

2. The Clerk is directed to immediately transfer this action to the Southern District of New York, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on November 10, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties